Certain policies covered plaintiff's stock of varnish, etc., contained in the buildings, additions, and extensions situated at certain street numbers, with privilege granted to do such work and to use such materials as are usual in the business of a "varnish warehouse." *Held*, that the word "warehouse," as so used, meant a building where goods and merchandise were stored; a building for the temporary storage of merchandise before it is sold, etc., and did not include adjacent buildings used for manufacturing varnish, so that no recovery could be had under the policy for loss sustained by fire in any of such adjacent buildings.

 [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 339–346; Dec. Dig. § 163.*

 For other definitions, see Words and Phrases, First and Second Series, Warehouse.]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Actions by Louis Leavitt against the National Fire Insurance Company of Hartford, Conn., and against the Mechanics' & Traders' Insurance Company of New Orleans. From a Municipal Court judgment in favor of plaintiff, defendants appeal. Reversed and dismissed.

Argued November term, 1914, before LEHMAN, DELANY, and WHITAKER, JJ.

Leo Levy, of New York City, for appellants.
Max D. Steuer, of New York City, for respondent.

LEHMAN, J. The plaintiff has brought two actions against the defendant companies to recover for a loss by fire in premises which he claims were covered by insurance policies issued by the defendants. The defendants deny that their insurance policies covered the particular premises where the fire occurred, and also affirmatively allege that the fire occurred by an increase of hazard which by the terms of the policy rendered the policy void. There is no substantial conflict of testimony, and the only question that requires serious consideration is whether, by any fair construction of the policies, they covered the premises where the fire occurred. The policy of the National Fire Insurance Company is in the standard form, and covers:

"Stock of varnish, gums, and other merchandise, including boxes, cans, kegs, and labels, samples, packages, empty or full, the property of the

assured or held in trust, or on commission, or on joint account with others, or on storage, or for which the assured may be liable, or sold, but not delivered or removed, tools, implements, utensils, appurtenances, furniture, and fixtures, all contained in or attached to the *buildings, additions, and extensions* situate Nos. 434/40 Driggs avenue and No. 214 North Twelfth street, borough of Brooklyn, city of New York. Privileged to do such work and to use such materials as are usual in the business of *a varnish warehouse.*"

It appears that at Nos. 434/40 Driggs avenue and 214 North Twelfth street the plaintiff has a large two-story building, which he uses apparently as a varnish warehouse or tank room. Adjacent to this building are two smaller one-story buildings, which the plaintiff calls "sheds" and "extension buildings." The first of these buildings or sheds was used as a "thinning room"; the second was used as a "boiling room" in the manufacture of varnish. The fire occurred in and was confined to the "boiling room," which was furthest away from the corner. These sheds or buildings were separated from each other and from the corner building by brick walls, and the only opening in the walls was for the insertion of iron pipes. In order to enter either of the smaller buildings or sheds, it was necessary to go through the yard. The entire controversy between the parties hangs upon the question whether these sheds are "additions or extensions" to the corner building, within the meaning of the policies.

In determining this question, the most important element seems to me to be the true meaning of the words "varnish warehouse," for by no possible construction of the policy can we enlarge its terms to cover buildings or sheds contiguous to the main building, which are not properly parts of a "varnish warehouse," and not directly communicating with the building at the corner situated at the street numbers specified in the policy. In this connection the situation of the surrounding buildings seems to me very pertinent. The plaintiff maintained on one city block a large paint and varnish business. Concededly there were at least three entirely separate buildings, or groups of buildings, on this block, all having entrances on a common yard. The largest building was used for a paint factory, and another building was used for a stable, and concededly neither of these buildings were covered by the policies now under consideration. The policies can therefore not be considered as covering the entire plant and its additions belonging to the plaintiff, but must be confined to the building actually described therein with its additions and extensions. In this respect the facts differ from those considered in the case of Arlington Co. v. Colonial Assurance Co., 180 N. Y. 337, 73 N. E. 34, and that case has no application, unless we can reasonably hold that the insurance companies intended to insure the plant used in plaintiff's entire *varnish business* contiguous to and extending from the main building actually described in the policy. There can, however, be no doubt that the parties contemplated and expressly provided that the building insured was to be used as a "varnish warehouse," and consequently I deem it evident that by no possible construction can contiguous sheds or buildings be considered as additions or extensions, unless it appears that their use could properly be included in the term "varnish *warehouse.*"

These sheds or buildings were concededly used in the manufacture

of varnish, and I know of no possible manner of construing the word "warehouse" to cover the manufacturing end of a business. The word "warehouse" is one of universal significance, and has frequently received judicial construction in other states, though, so far as I can find, only in criminal cases. The best definition which I have been able to find is contained in the case of State v. Wilson, 47 N. H. 101, at page 104:

"A warehouse * * * is a building in which any kind of goods, wares, or merchandise is kept and stored. * * * A warehouse in the more limited sense, is the building or place in which a warehouseman deposits the goods of others in the course of his business. * * * But in common discourse I understand the word is applied to buildings used for the temporary storage of merchandise before it is put into market for sale, or put in the course of transportation by sea or land to another place, though the buildings may not belong to a warehouseman, but to the owners of the goods. Such are the buildings in which manufacturers keep their goods for a time before they put them into market for sale or send them abroad."

The manufacture of varnish can certainly not be held to come within this definition of a "warehouse," and the testimony of the defendant that such work as was done in the boiling room is such work as is usual in the business of a varnish warehouse is insufficient to permit us to enlarge the plain and universally accepted meaning of that term.

Aside, however, from these general considerations, we have documentary evidence that the plaintiff himself understood the contract of insurance in the same way, for in a letter written on February 28, 1907, he protested against "an added 2% exposure charge to my *storehouse*," and in the same letter says:

"There is little, if any, danger of fire *communicating from varnish building to those adjacent*" (italics are mine).

It would consequently seem that the plaintiff has already put upon the policy the same construction as that now placed upon it by the defendants.

I have not in this opinion considered the second point raised by the defendant, viz., that the fire occurred through an increase of hazard, for I think this defense is without merit. If the contract of insurance is construed as sufficiently broad to include under the term of "varnish warehouse" a shed intended to be used for boiling varnish, then obviously such use could not constitute an increase of hazard. On the other hand, if, as I think, it cannot be so construed, then there can be no increase of hazard, for there has never been any insurance risk of any kind.

Judgments should therefore be reversed, with costs, and complaints dismissed, with costs. All concur.